IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MCS INDUSTRIES, INC., § § Plaintiff, § § v. § § MICHAELS STORES, INC.; THE § MICHAELS COMPANIES, INC.; § MICHAELS STORES PROCUREMENT § COMPANY, INC., and HARBORTOWN § INDUSTRIES, INC., § § Defendants. § | **CIVIL ACTION** No. 5:21-CV-02563-JLS |

### DEFENDANTS' BRIEF IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT

Victor C. Johnson *(admitted pro hac vice)*
Texas Bar No. 24029640
VJohnson@dykema.com
**DYKEMA GOSSETT PLLC**
1717 Main, Suite 4200
Dallas, Texas 75201
(214) 462-6400
(214) 462-6401 (fax)

Jason C. Reichlyn (317962)
JReichlyn@dykema.com
**DYKEMA GOSSETT PLLC**
1301 K Street NW
Suite 1100 West
Washington, D.C. 20005
(202) 906-8650
(202) 906-8669 (fax)

*Counsel for Defendants Michaels Stores, Inc., The Michaels Companies, Inc., and Michaels Stores Procurement Company, Inc.*

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ..................................................................................................1
   A. Background ...............................................................................................1
   B. Michaels Changes Frame Vendors ............................................................3
   C. Plaintiff's Lawsuit......................................................................................4
II. ARGUMENTS .......................................................................................................5
   A. Legal Standard ...........................................................................................5
   B. Arguments..................................................................................................6
      1. The Complaint Fails To Provide Each Defendant With Notice of
         The Accusations Against It. .............................................................6
      2. Plaintiff has no standing to sue because it has failed to factually
         plead damages..................................................................................8
      3. The Format Name Is Not A Source Identifier In The Retail
         Context...........................................................................................10
      4. Michaels STUDIO DÉCOR Frames Are Not Counterfeits ..........13
III. CONCLUSION....................................................................................................14

## **TABLE OF AUTHORITIES**
**Page(s)**

**Cases**

*Bell Atlantic Corp. v. Twombly*,
 550 U.S. 544 (2007) .................................................................................................5, 6, 10

*Binder v. Weststar Mortg., Inc.*,
 2016 U.S. Dist. LEXIS 90620 (E.D. Pa. July 13, 2016) .........................................................7

*G6 Hosp. Franchising LLC v. HI Hotel Grp., LLC*,
 171 F. Supp. 3d 340 (M.D. Pa. 2016), vacated and remanded on other grounds, 670 F. App'x 759 (3d Cir. 2016) .....................................................................................................13

*Louis Vuitton Malletier & Oakley, Inc. v. Veit*,
 211 F. Supp. 2d 567 (E.D. Pa. 2002) ........................................................................13

*Mishawaka Rubber & Woolen Mfg. v. S.S. Kresge Co.*,
 316 U.S. 203 (1942) ...................................................................................................9

*Pa. v. Think Fin., Inc.*,
 2016 U.S. Dist. LEXIS 4649 (E.D. Pa. Jan. 14, 2016) .................................................5

*Pennzoil-Quaker State Co. v. Smith*,
 No. 2:05-cv-1505, 2008 U.S. Dist. LEXIS 68445, 2008 WL 4107159 (W.D. Pa. Sept. 2, 2008) .................................................................................................................13

*Sheeran v. Blyth Shipholding S.A.*,
 2015 U.S. Dist. LEXIS 168019 (D.N.J. Dec. 16, 2015) ...........................................5, 7

*Spokeo, Inc v. Robins*,
 136 S. Ct. 1540 (2016) ................................................................................................8

*Staropoli v. Metro. Life Ins. Co.*,
 465 F. Supp. 3d 501 (E.D. Pa. June 8 2020) ..............................................................7

*Tatum v. Chrysler Grp. LLC*,
 2012 U.S. Dist. LEXIS 171746 (D.N.J. Dec. 3, 2016) ................................................6

**Statutes**

15 U.S.C. § 1114(1)(a) ...............................................................................................10, 11, 12

15 U.S.C. § 1114(b) ............................................................................................................9

15 U.S.C. § 1117(a) ............................................................................................................9

15 U.S.C. § 1127 .................................................................................................................. 13

17 U.S.C. § 504(b) ................................................................................................................. 9

Lanham Act, 15 U.S.C. § 1114(1)(a), and (2) ..................................................................... 13

**Other Authorities**

SAC 52 .................................................................................................................................. 12

Fed. R. Civ. P. 8(a)(2) ........................................................................................................ 5, 6

Fed.R.Civ.P. 8 .................................................................................................................... 5, 7

Fed.R.Civ.P. 12(b)(6) ................................................................................................... 1, 5, 6

Fed.R.Civ.P. 8(a) .......................................................................................................... 1, 5, 7

Michaels Stores, Inc. ("MSI"), The Michaels Companies, Inc. ("TMC"), and Michaels Stores Procurement Company, Inc. ("MSPC") (collectively, "Michaels") respectfully submit their Brief in Support of Their Motion Dismiss Plaintiff MCS Industries, Inc.'s ("MCS") Second Amended Complaint ("Complaint" or "SAC") pursuant to Rules 8(a) and 12(b)(6) of the Federal Rules of Civil Procedure. As detailed below, MCS failed to place Michaels on notice of the particular claims against them, and its Complaint fails to state a claim upon which relief can be granted.

## I. INTRODUCTION

**A.    Background**

This is not a case about infringement, and certainly not a case of counterfeiting. This is a case about MCS refusing to accept that it lost a major client through its own acts. Now, in a desperate attempt to have this Court force Michaels to buy and distribute its products, MCS brings this lawsuit.

MCS is a picture frame manufacturer. It makes low-cost picture frames and sells them to large retailers like Michaels. For a number of years, MCS sold Michaels its frames[1], which were packaged for sale under Michaels' STUDIO DÉCOR trademark. STUDIO DÉCOR is the umbrella trademark Michaels uses for a number of its house-branded products, including frames. Michaels has used the STUDIO DÉCOR trademark since at least 2010. Michaels customers know the STUDIO DÉCOR name and associate it as a Michaels brand.

STUDIO DÉCOR products are identified by purple and white packaging, simple white lettering, and most importantly, a large white banner that appears prominently on the packaging

---

[1] The SAC does not assert any infringement of its frames themselves.

1

with Michaels' STUDIO DÉCOR trademark.² Indeed, the design was created to draw customers' eyes to the STUDIO DÉCOR trademark.



**Packaging design for STUDIO DÉCOR frames created and owned by Michaels**

Michaels markets and sells *all* frames under the STUDIO DÉCOR trademark. Thus, customers associate *all* frame products as originating under the single brand STUDIO DÉCOR. Further, Michaels, not MCS, owns the rights to the packaging design.³ Indeed, Michaels designed the packaging so that customers' eyes are naturally drawn to the STUDIO DÉCOR mark. When customers purchase the frames, the sales receipt SKU identifies the product as "SD" or "STUDIO DÉCOR." Over the years, Michaels has sold millions of dollars in frames to the public under its trademark, and customers have come to understand this mark as originating from Michaels.

---

² Likewise, the SAC also does not assert any infringement of the frames' outside packaging. Michaels, not MCS, designed and created the packaging.

³ Although the SAC makes reference to the similarities in the packing, MCS does not allege any infringement of the packaging.

Simply stated, when a customer buys a STUDIO DÉCOR frame at Michaels, they associate that purchase with a Michaels, and not MCS, product.

**B.       Michaels Changes Frame Vendors**

As noted in the SAC, Michaels previously used MSC as a vendor on some of its frames. SAC at 71-71.  These frames, however, were not marketed and sold as originating from MCS or under MCS' mark.  Rather, MCS was the supplier of frames to Michaels, which then marketed and sold them under its house brand STUDIO DÉCOR.  Michaels used various collection names (Stockholm, Format, etc.) to distinguish sizes and/or styles.  SAC at Ex. H.  Collection names do not serve as source identifiers of goods.  Instead, Michaels intentionally packages, markets, and sells *all* frames in its stores under the single source identifier STUDIO DÉCOR.

In 2020 when the pandemic hit, Michaels (like many other companies) was forced to close many of its stores and alter its business practices. To meet this challenge, Michaels engaged all of its product partners to discuss a variety of necessary changes, including to standard payment terms. Unlike other vendors who treated the relationship as a partnership, MCS refused to make any accommodations to this term or others. Indeed, MCS was anything but a reasonable partner during the unprecedented, global event.  Michaels therefore opted to discontinue its relationship with MCS as the supplier for its frames under the STUDIO DÉCOR mark.

This was not the first time MCS had acted in ways contrary to a good business partnership. Only a few months ago, Michaels attempted to register a trademark for STOCKHOLM, a name it used on one of its STUDIO DÉCOR frames. However, Michaels' application was denied by the Trademark Office because MCS, unbeknownst to Michaels and without any legal right to so, had filed for the same trademark. When Michaels confronted MCS about this issue, MCS was forced

3

to admit its wrongful conduct and withdraw its application so that Michaels' application could move forward.

After engaging a new partner to produce the frames under the STUDIO DÉCOR mark, Michaels also changed the frame name from Format to Structure. Since Michaels owns the rights to the packing, everything else remained the same.



**Updated packaging design for STUDIO DÉCOR frames with Structure collection name**

Thus, when a customer buys a STUDIO DÉCOR frame at Michaels today, they still associate that purchase with a Michaels trademark and as a Michaels product. No customer is confused or likely to be confused that this frame is associated with MCS.

C.     **Plaintiff's Lawsuit**

Plaintiff brought this lawsuit alleging that (1) Michaels' SKU reference on sales receipts is trademark infringement; and (2) Michaels' use of instructions and name on the instructions is copyright and trademark infringement.[4] SAC at 50-67. Specifically, Plaintiff alleges that after a

---

[4] The SAC refers to the STUDIO DÉCOR frame at Michaels using the Structure collection name as a "Infringing Product" and that the frames use nearly identical packaging and appearance as its frames. See, e.g., SAC

4

customer makes a purchasing decision on a STUDIO DÉCOR frame at Michaels using the Structure collection name, the Point-of-Sales system prints a receipt that infringes MCS' mark. SAC at 52 & Ex. I.[5] MCS also alleges that inside the frame packaging on the back of the frame are instructions that use the Format name and are copies of MCS' copyright. SAC at 53. As shown below, this Court should dismiss Plaintiff's pursuant to Rules 8(a) because the SAC fails to place each of the Michaels entities on notice of the particular claims against them and pursuant to Rule 12(b)(6) because it fails to state any claim upon which relief can be granted.

## II. ARGUMENTS

**A.     Legal Standard**

Rule 8(a) of the Federal Rules of Civil Procedure states that a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This is meant to "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Group pleading, or pleading multiple defendants together without particularity, runs afoul Rule 8(a) where the pleading fails to provide defendants with fair notice of their respective alleged wrongdoing. *See Pa. v. Think Fin., Inc.*, 2016 U.S. Dist. LEXIS 4649, at *34 (E.D. Pa. Jan. 14, 2016); *see also Sheeran v. Blyth Shipholding S.A.*, 2015 U.S. Dist. LEXIS 168019, at *8 (D.N.J. Dec. 16, 2015) (noting that many courts in the Third Circuit agree that group pleading does not satisfy Rule 8).

---

at 51. The implication from this allegation is that Michaels product is a knock-off or counterfeit. However, the SAC does not assert that the frames themselves are entitled to any rights or protection, or that Michaels' sale of its frames themselves from a new vendor infringes some right. This is because MCS owns no intellectual property rights in the appearance of the frames. Similarly, although the SAC makes reference to the similarities in the packing, MCS does not assert any infringement of the packaging. This is because MCS owns no intellectual property rights in the packaging.

[5] A closer inspection of the sales receipt actually shows that the Point-of-Sales system prints a receipt that identifies these frames as a STUDIO DÉCOR frame by using "SD" as the source identifier. After the source identifier, the sales receipt then shows the size, collection name, SKU number, quantity and price. See SAC at Ex. I,

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for dismissal where a plaintiff "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive dismissal under Rule 12(b)(6), well-pleaded factual allegations are treated as true, and all reasonable inferences are drawn in the plaintiff's favor by the court. *Twombly*, 550 U.S. at 555–56. A complaint must allege "enough facts to state a claim for relief that is plausible on its face." *Id.* at 570. Legal conclusions are not taken as true, and "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Dismissal under Rule 12(b)(6) is appropriate when a plaintiff fails to allege "enough facts to state a claim to relief that is plausible on its face" and fails to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. In addition, a court should exercise its power to dismiss a claim if the pleading lacks an allegation regarding an essential element required to obtain relief. *See, e.g.*, *Tatum v. Chrysler Grp. LLC*, 2012 U.S. Dist. LEXIS 171746 (D.N.J. Dec. 3, 2016).

Thus, this Court need not determine at this preliminary stage whether MCS's claims will ultimately succeed on the merits. *Twombly*, 550 U.S. at 556. Instead, the Court must identify the factual allegations entitled to the presumption of truth and determine whether they state a plausible claim for relief. *Iqbal*, 556 U.S. at 679. MCS's conclusory allegations of law, inferences unsupported by facts, and reliance on a formulaic recitation of the elements for the asserted causes of action are insufficient.

**B.   Arguments**

    **1.   The Complaint Fails To Provide Each Defendant With Notice of The Accusations Against It.**

The Complaint, which joins multiple entities into every cause of action, is improperly vague and fails to provide adequate notice to each defendant of its specific alleged misconduct. Rule 8(a)(2) of the Federal Rules of Civil Procedure requires a pleading to contain facts sufficient

6


to give rise to a reasonable inference that a particular named defendant is liable for a particular misconduct. *See Iqbal*, 556 U.S. at 678. Lumping defendants together "without any additional guidance as to the Defendants themselves and what functions they performed, [makes it] impossible to untangle Plaintiff's specific theory of liability against each individual defendant." *Sheeran*, 2015 U.S. Dist. LEXIS 168019, at*7–*8. The Eastern District of Pennsylvania and essentially all Third Circuit courts have recognized group pleading as inadequate to satisfy Rule 8. *See e.g.*, *Binder v. Weststar Mortg., Inc.*, 2016 U.S. Dist. LEXIS 90620, at *10 (E.D. Pa. July 13, 2016) (citing *Pietrangelo v. NUI Corp.*, No. 04-3223, 2005 U.S. Dist. LEXIS 40832, at *10 (D.N.J. July 18, 2005) ("The Complaint fails to satisfy even the liberal notice pleading standard of Rule 8(a) because Plaintiff fails to differentiate between defendants."); *Staropoli v. Metro. Life Ins. Co.*, 465 F. Supp. 3d 501, 517 (E.D. Pa. June 8 2020); *Sheeran v. Blyth Shipholding S.A.*, 2015 U.S. Dist. LEXIS 168019, at *7–*8 (D.N.J. Dec. 16, 2015) (citing a myriad of cases where group pleading failed to place Defendants on notice of the claims against each of them).

Similar to the above cases, MCS pleads MSI, TMC, and MSPC together as "collectively 'Michaels,'" for all causes of action. (Compl. at 1.) MCS does not delve into the differences between each entity, which groups within Michaels allegedly participated in the conception, design, production, distribution, and marketing of the products in dispute, and which entities were allegedly involved in which stage. The Michaels entities cannot be expected to understand which causes of action they allegedly played a role in. This sort of group pleading runs afoul Rule 8(a) of the Federal Rules of Civil Procedure, which requires plaintiffs to make defendants aware of their specific alleged wrongful conduct.  Accordingly, this Court should dismiss Plaintiff's complaint or order Plaintiff to replead with particularity.

### 2. Plaintiff has no standing to sue because it has failed to factually plead damages.

MCS does not have standing to sue because it has failed to plead a concrete injury. *See Spokeo, Inc v. Robins*, 136 S. Ct. 1540 (2016). A "concrete" injury must be "de facto"; that is, it must actually exist. *Id.* MCS fails to plead a single concrete example of damages resulting from its claims. Courts have consistently held that legal conclusions are not taken as true and "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Yet, that is exactly what MCS has done for a majority of its complaint, particularly regarding its "injury". In its Damages section[6], Plaintiff lists a string of generic, unsubstantiated damages claims, such as:

- "Defendants' sale of the Infringing Product … has and will continue to damage plaintiff." (SAC ¶ 68.)

- "MCS is suffering irreparable harm, including but not limited to, harm caused to its reputation and to the value of its trademarks and copyrights." (SAC ¶ 70.)

- "Plaintiff continues to experience immeasurable damage as consumers continue to associate the "Structure" products as goods associated with FORMAT frames." (SAC ¶ 75.)

- "Defendants' sales of the Infringing Product is damaging the market and MCS's ability to lawfully commercialize and grow the FORMAT brand" (SAC ¶ 76.)

Plaintiff fails to provide a single fact to substantiate these statements, and instead is relying on conclusions to masquerade as facts.

The only other "damages" Plaintiff's complaint asserts is lost sales, as alleged in paragraphs 70 and 71:

- "In 2020, following the introduction of Michaels "Structure" brand frames, MCS incurred a 70% reduction in sales of Format Frames to Michaels, resulting in over one million dollars in lost revenue as compared to the year prior." (SAC ¶ 71.)

---

[6] Section V of Plaintiff's SAC.

- "In 2021, MCS lost 100% of its business selling FORMAT Frames to Michaels resulting in a loss of more than $1.5 million as compared to sales in 2019 prior to the introduction of "Structure" brand frames." (SAC ¶ 72.)

However, this "damage" theory is *not* the result of any confusion of customers or any actionable infringement. This damage is purely the loss in revenue that resulted when Michaels dropped Plaintiff as a supplier, which it had every right to do. This alleged "reduction in sales" would have occurred regardless of any of the alleged actionable wrongdoing.

Furthermore, "lost sales" is not a recoverable theory of damages under trademark or copyright law. *See* 15 U.S.C. § 1117(a); 17 U.S.C. § 504(b). As such, the complaint should be dismissed.

MCS's damage theory also fails in that the Complaint contains no facts demonstrating that the alleged infringement was done to " cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1114(b) (providing that the mark owner is not "entitled to recover profits or damages unless the acts have been committed with knowledge that such imitation is intended to be used to cause confusion, or to cause mistake, or to deceive"). MCS has pleaded no facts showing that the alleged infringement (which takes place *after* the sale is completed) was done to "cause confusion, or to cause mistake, or to deceive."

Finally, the SAC fails to allege any facts that would entitle MCS to any "lost sales" as damages, and in fact pleads itself out of any recoverable damages. Under either trademark or copyright law, in order for the plaintiff to be entitled to damages of lost sale, the plaintiff must show that the alleged lost sale is the directly attributable to the alleged infringement. *See e.g., Mishawaka Rubber & Woolen Mfg. v. S.S. Kresge Co.*, 316 U.S. 203, 206 (1942) (holding that a plaintiff is only be entitled to recover for the diversion of sales where the sale is demonstrably attributable to the unlawful use of his mark); 17 U.S.C. § 504(b) (stating that plaintiff is only

9

entitled to "actual damages suffered by him or her as a result of the infringement"). Here, under the facts alleges, all of the alleged "infringement" took place *after* the sale for the STUDIO DÉCOR products was completed, (1) the use of the mark on the sales receipt; and (2) the use of instructions found inside the packing. *See* Compl. at 51-52 ("After purchase…."). The Complaint alleges no facts demonstrating that customers made any purchasing decision based on the alleged infringing acts. Indeed, Plaintiff cannot plead such facts because the alleged infringement all takes place *after* the sale for the STUDIO DÉCOR products was completed. To be clear, no customers were confused about what they were buying from Michaels – a STUDIO DÉCOR product. Because the Complaint fails to plead any recoverable damages, it should be dismissed.

### 3. The Format Name Is Not A Source Identifier In The Retail Context.

In order to succeed on a federal trademark infringement claim, MCS must plead that Michaels' stores' use of its Structure mark causes a likelihood of confusion with MCS's mark. 15 U.S.C. § 1114(1)(a). MCS has not done this for two reasons. First, as articulated above, MCS has not pleaded any facts showing likelihood of confusion. Instead, the Complaint relies upon conclusions and pure conjecture that is not allowed under *Iqbal* and *Twombly*.

Second, Michaels cannot have caused confusion in switching product names because both the Structure and Format names on the packaging are not being used as identifiers in the retail context. The Structure and Format collection names are used under Michaels in-house mark: "Studio Décor." STUDIO DECOR is the moniker given to all house-brand Michael's frame products. Studio Décor packaging is distinctive throughout stores. Most notably, STUDIO DECOR products are branded with a *large white band* around their packages that say "Studio Décor." This band is then supplemented by simple, large, generic white text. See SAC at Ex. H.



**Example of Marketing of frames under STUDIO DÉCOR.**

The STUDIO DÉCOR brand is the *only* brand for frames offered in Michaels stores. There is no allegation that Michaels offered, marketed, or sold frames using that Format name as the source identifier of the goods. This is simply because Michaels does not market and sell frames under any other brand name STUDIO DÉCOR.

Before Michaels fired MCS as vendor, customers visiting and purchasing frames in Michaels stores encountered a single brand, STUDIO DÉCOR, and associated and understood the product as originating under the mark owned by Michaels. *See* SAC at Ex. H. The SAC pleads no facts showing the collection name Format served as a source identifier of these goods. Now, after Michaels fired MCS as vendor, Michaels has continued to use the packaging it created to market and sell its STUDIO DÉCOR frames from a new vendor, and customers visiting and purchasing frames in Michaels stores still understand these goods as originating under the STUDIO DÉCOR brand. *Id.* This is evident by MCS's failure to plead a single case of confusion at the time of purchase

The SAC other allegations fail to plead any facts plausibly showing causes a likelihood of confusion, and instead rely merely on conclusions.  Plaintiff allegation that the Point-of-Sales system prints a receipt that infringes MCS' mark fails because (1) Michaels *only* offers and sells frames under the STUDIO DÉCOR brand; and (20 this use is *after* a customer makes a purchasing decision on a STUDIO DÉCOR frame at Michaels using the Structure collection name.  Having already made the decision to buy a STUDIO DÉCOR frame (the only brand a customer can buy), there can be no likelihood of confusion that the frame is somehow associated with MCS.  *See* SAC 52 and Ex. H & I.  Furthermore, the sales receipt actually identifies these frames as  a STUDIO DÉCOR frame by using "SD" as the source identifier.

MCS' allegation regarding the use of the mark on an insert inside the frame packaging on the back of the frame likewise fails.  SAC at 53.  There is no allegation that the instructions at issue are part of the customer's buying decision or that even customers saw these instructions prior to making a purchasing decision.  *Id.*  Indeed, because the instructions play no role in a customer buying decision, the SAC cannot adequately plead any facts showing likelihood of confusion.  Further, because  Michaels *only* offers and sells frames under the STUDIO DÉCOR brand, the SAC cannot plead any facts showing that customers would not understand or associate this use as an indicator that the STUDIO DÉCOR actually originated from MCS.

These facts simply fail to adequately plead fact demonstrating a likelihood of confusion, and the SAC's trademark and counterfeit claims should be dismissed.

### 4. Michaels STUDIO DÉCOR Frames Are Not Counterfeits

MCS's counterfeit claim should be dismissed because MCS has failed to plead any facts showing Michaels intentionally sold any frames by attempting to deceive customers into believing that they would getting a product under MCS's mark. Counterfeiting is defined as "the act of producing or selling a product with a sham trademark that is an intentional and calculated reproduction of the genuine trademark." *Louis Vuitton Malletier & Oakley, Inc. v. Veit*, 211 F. Supp. 2d 567, 581 (E.D. Pa. 2002). To establish trademark counterfeiting, a plaintiff must plausibly plead that: (1) "the defendant 'infringed a registered trademark in violation of the Lanham Act, 15 U.S.C. § 1114(1)(a), and (2) intentionally used the trademark knowing that i[t] was a counterfeit or was willfully blind to such use.'" *Pennzoil-Quaker State Co. v. Smith*, No. 2:05-cv-1505, 2008 U.S. Dist. LEXIS 68445, 2008 WL 4107159, at *20 (W.D. Pa. Sept. 2, 2008). For purposes of a trademark counterfeiting claim, a "counterfeit" is "a spurious mark *on a product* which is identical with, or substantially indistinguishable from, a registered mark. 15 U.S.C. § 1127; id. § 1116(d)(1)(B)(ii). "Spurious" has been defined as "[d]eceptively suggesting an erroneous origin[,] fake." *G6 Hosp. Franchising LLC v. HI Hotel Grp., LLC*, 171 F. Supp. 3d 340, 346 (M.D. Pa. 2016), vacated and remanded on other grounds, 670 F. App'x 759 (3d Cir. 2016).

First, MCS's counterfeit claim fails because MCS has not (and cannot) alleged that Michaels used the alleged mark on any product. As the SAC makes clear, Michaels offers and sells the frames under the STUDIO DÉCOR mark and the Structure name. SAC at 51 & Ex. H. Customers that shop at a Michaels store know that they are buying a frame by STUDIO DÉCOR. Nowhere is the Format name contained on the frames or the packaging. Rather, as the SAC alleges, the Format mark appears only on the inside of packaging and on sales receipts, both of which customers interact with *after* a purchasing decision is made and completed. SAC at 52-53. Because

13

Michaels frames are marketed and sold as STUDIO DÉCOR frames and the Structure collection name, MCS fails to state a claim for counterfeiting.

Second, the SAC fails to allege any facts that Michaels intentionally used MCS's mark knowing that it was a counterfeit or was willfully blind to such use. To the contrary, Michaels intentionally changed its packaging on the frames so that while it kept the brand as STUDIO DÉCOR frames, the collection name was changed from Format to Structure. SAC at 51 & Ex. H. Prior to the service of the SAC, there are no facts alleged that show Michaels even knew its new vendor was using the name on the instructions that are found inside the packaging or, more importantly, that Michaels intentionally included that mark on the instructions. Similarly, the SAC fails to allege any facts that Michaels intentionally kept Plaintiff's mark on its SKUs. Indeed, the facts pleaded in the SAC clearly shows that Michaels "intent" was to move on from MCS as a vendor and market and to continue to market and sell its STUDIO DÉCOR frames under the new collection name Structure. The SAC fails to plead any facts showing that Michaels used MCS's mark knowing that it was a counterfeit or was willfully blind to such use on any product.

Accordingly, this court should dismiss Plaintiff's counterfeit claim.

### III. CONCLUSION

For the foregoing reasons, Michaels respectfully requests this Court grant their Motion and dismiss the Amended Complaint for failure to place each of the Michaels entities on notice of the particular claims against them and failure to state any claim for which relief can be granted, and for all other relief the Court finds just and appropriate.

Dated:  November 17, 2021

    Respectfully submitted,

*/s/ Victor C. Johnson*
Victor C. Johnson *(admitted pro hac vice)*
Texas Bar No. 24029640
VJohnson@dykema.com
**DYKEMA GOSSETT PLLC**
1717 Main, Suite 4200
Dallas, Texas 75201
(214) 462-6400
(214) 462-6401 (fax)

Jason C. Reichlyn (317962)
JReichlyn@dykema.com
**DYKEMA GOSSETT PLLC**
1301 K Street NW
Suite 1100 West
Washington, D.C.  20005
(202) 906-8650
(202) 906-8669 (fax)

**ATTORNEYS FOR DEFENDANTS MICHAELS STORES, INC., THE MICHAELS COMPANIES, INC., AND MICHAELS STORES PROCUREMENT COMPANY, INC.**

## CERTIFICATE OF SERVICE

I hereby certify that on this 17th day of November, 2021, a true copy of the foregoing was servedon all counsel of record via electronic service through the Court's e-filing system.

*/s/ Victor C. Johnson*
Victor C. Johnson

4864-7170-4068.2